

# IN THE
# TENTH COURT OF APPEALS

### No. 10-19-00226-CV

**ALLIANCE AUTO AUCTION OF DALLAS, INC.,**

                                        **Appellant**

 **v.**

**LONE STAR CLEBURNE AUTOPLEX, INC.,**

                                        **Appellee**

From the 18th District Court
Johnson County, Texas
Trial Court No. DC-C201900316

## MEMORANDUM OPINION

Lone Star Cleburne Autoplex, Inc., a company that operated an auto dealership in Cleburne, Texas, sued two of its former employees, Robert Russell and Robert Hansen, alleging various breaches of fiduciary duty that resulted in millions of dollars in losses for Lone Star. Lone Star also sued Alliance Auto Auction of Dallas, Inc. alleging it knowingly participated in Russell and Hansen's activities. Alliance moved to compel arbitration. Because the trial court did not abuse its discretion in denying Alliance's motion to compel arbitration, the trial court's order is affirmed.

## BACKGROUND

Lone Star registered its employees, Russell and Hansen, with AuctionACCESS, a third-party service provider that allows its members to remotely access information about vehicles and auctions across America prior to an auction. The purpose of the registration was to permit Russell and Hansen to act on behalf of Lone Star as its agents at auto auctions like ones held by Alliance so that they could "buy and sell automobiles." AuctionACCESS is not a party to the underlying lawsuit.

The registrations incorporated by reference AuctionACCESS's terms and conditions. Alliance argued to the trial court that the arbitration clause included in AuctionACCESS's terms and conditions entitled Alliance to compel Lone Star to arbitrate its claims against Alliance. The trial court disagreed.

## ISSUES AND REVIEW

In three issues, Alliance argues that the arbitration clause included in AuctionACCESS's terms and conditions is enforceable against Lone Star by Alliance under the Federal Arbitration Act; the clause assigns the issue of arbitrability to an arbitrator, not the trial court; and to the extent the trial court could decide arbitrability, the trial court incorrectly concluded that Lone Star's claims were not arbitrable.

A party seeking to compel arbitration under the FAA, as Alliance is here, must establish that (1) there is a valid arbitration clause, and (2) the claims in dispute fall within that agreement's scope. *In re Rubiola*, 334 S.W.3d 220, 223 (Tex. 2011); *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005). If the party seeking to compel arbitration meets this burden, the burden then shifts, and to avoid arbitration, the party opposing it

must prove an affirmative defense to the provision's enforcement, such as waiver. *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018).

We review a trial court's order denying a motion to compel arbitration for an abuse of discretion. *Id.*; *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 642-43 (Tex. 2009). We defer to the trial court's factual determinations if they are supported by evidence but review its legal determinations de novo. *Id.* Whether the claims in dispute fall within the scope of a valid arbitration agreement is a question of law, which is also reviewed de novo. *Id.*; *Perry Homes v. Cull*, 258 S.W.3d 580, 598 & n.102 (Tex. 2008).

### TRIAL COURT OR ARBITRATOR

Initially, we address Alliance's second issue regarding whether the trial court or an arbitrator should determine the underlying dispute's arbitrability. The case law on this issue is clear. The question of whether a case should be sent to arbitration is a gateway issue that courts must decide at the outset of litigation. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002) (citations omitted) ("[A] gateway dispute about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide."); *see also Perry Homes v. Cull*, 258 S.W.3d 580, 589 (Tex. 2008) (citations omitted) (explaining that courts decide "gateway matters regarding 'whether the parties have submitted a particular dispute to arbitration'"). Such circumstances are limited to (1) whether the parties have a valid arbitration agreement at all and (2) whether an arbitration clause in a concededly binding contract applies to a particular type of controversy. *Robinson v. Home Owners Mgmt. Enters.*, 590 S.W.3d 518, 525 (Tex. 2019). Referral of a gateway dispute to the court

avoids the risk of forcing parties to arbitrate a matter they may well not have agreed to arbitrate. *Id*. Thus, because this is a gateway issue for the courts to decide, Alliance's second issue is overruled.

**SCOPE OF THE AGREEMENT**

Next, assuming without deciding there is a valid arbitration agreement between the parties, we determine whether Lone Star's claims fall within the scope of the agreement. When we determine whether a particular claim is within the scope of an arbitration agreement, we examine the terms of the arbitration agreement and the factual allegations pertinent to the claims rather than legal causes of action asserted. *See In re Rubiola, 334 S.W.3d 220, 225 (Tex. 2011); In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 754 (Tex. 2001); *Dennis v. Coll. Station Hosp., L.P.*, 169 S.W.3d 282, 285 (Tex. App.—Waco 2005, pet. denied). Generally, if the facts alleged "touch matters," have a "significant relationship" to, are "inextricably enmeshed" with, or are "factually intertwined" with the contract that is subject to the arbitration agreement, the claim will be arbitrable. *Dennis*, 169 S.W.3d 282 at 285.

In this case, the arbitration clause which is contained within AuctionACESS's terms and conditions is limited to any controversy or claim "related directly or indirectly to this Agreement[.]" The "Agreement" is defined to include "these terms and conditions, our registration application and any other agreements between you and us, any membership policies or operating procedures that we may post on our website from time to time, and our Privacy Policy."

All of Lone Star's claims against Alliance flow from its allegations that Russell and

Hansen embezzled large amounts of money from Lone Star and then attempted a cover-up through activities with Alliance. Examples of the allegations include: Russell and Hansen stopped using other auctions and dealers to sell used cars and strictly used Alliance; Alliance "wined and dined" Russell and Hansen; Russell would hide vehicles at Alliance and sold vehicles at a loss; fees Alliance charged were greatly increasing; and vehicles were sold multiple times.

After reviewing the briefs, the petition, the motion for arbitration, and the response thereto, there were no facts alleged that related directly or indirectly to AuctionACCESS's Agreement as that term is defined. Therefore the facts of Lonestar's petition cannot reasonably be said to "touch matters," have a "significant relationship" to, are "inextricably enmeshed," or are "factually intertwined with," AuctionACCESS's Agreement. Accordingly, the allegations asserted by Lone Star are outside the scope of the arbitration clause, and Alliance's third issue is overruled.

CONCLUSION

Because Alliance could not meet one step of the two-step burden to compel arbitration, the trial court did not abuse its discretion in denying Alliance's motion to compel, and we need not specifically discuss Alliance's first issue. Accordingly, the trial court's July 2, 2019 Order Denying Motion to Compel Arbitration and Stay Case Filed by Defendant Alliance Auto Auction of Dallas, Inc. is affirmed.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
    Justice Johnson, and
    Justice Smith
Affirmed
Opinion delivered and filed January 26, 2022
[CV06]

